Nick Baltaxe (SBN 329751)
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
E-mail:      nbaltaxe@duanemorris.com

Gerald L. Maatman (IL 6181016) *(pro hac vice application forthcoming)*
Jennifer A. Riley (IL 6272366) *(pro hac vice application forthcoming)*
**DUANE MORRIS LLP**
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
E-mail:      gmaatman@duanemorris.com
             jariley@duanemorris.com

Shireen Y. Wetmore (SBN 278501)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
E-mail:      sywetmore@duanemorris.com

Attorneys for Defendant,
KELLY SERVICES GLOBAL, LLC

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA MARTINEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>STEELCASE, INC.; KELLEY SERVICES GLOBAL, LLC, a limited liability company; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT KELLY SERVICES GLOBAL LLC'S NOTICE OF REMOVAL OF CIVIL CLASS ACTION TO THE UNITED STATES DISTRICT COURT**<br><br>[Removed from San Bernardino Superior Court, Case No. CIVSB2324513]<br><br>*[Filed concurrently with Declaration of Terri Ministrelli, Corporate Disclosure Statement, Request for Judicial Notice, ; Civil Case Cover Sheet; and Notice of Interested Parties]* |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF
RECORD:**

**PLEASE TAKE NOTICE** that Defendant KELLY SERVICES GLOBAL,
LLC hereby removes the above-captioned case from the Superior Court of the State of
California, County of San Bernardino, to the United States District Court for the
Central District of California, asserting original jurisdiction under 28 U.S.C. §§
1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and removal
jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.

## I.    BACKGROUND

1.      On September 21, 2023, Plaintiff Regina Martinez ("Plaintiff") filed a
Class Action Complaint ("Complaint") in the Superior Court of the State of
California, County of San Bernardino ("Superior Court"), entitled *Regina Martinez v.
Kelly Services Global, LLC,* Case Number CIVSB2324513.  Plaintiff asserts causes of
action against Kelly Services Global, LLC ("Kelly" or "Defendant") for alleged wage
and hour violations.  (Declaration of Terri Ministrelli in Support of Kelly's Notice of
Removal ("Ministrelli Decl.") ¶ 6, Ex. A, Plaintiff's Class Action Complaint.)

2.      Plaintiff bases her claims on alleged violations of the California Labor
Code.  Specifically, Plaintiff claims that Kelly violated the Labor Code by:  (1) failing
to pay Plaintiff and the putative class members minimum wages for time worked; (2)
failing to pay Plaintiff and the putative class members overtime wages for time
worked; (3) failing to provide Plaintiff and the putative class members with meal
periods in accordance with California law; (4) failing to provide Plaintiff and the
putative class members with rest periods in accordance with California law; (5) failing
to indemnify Plaintiff and the putative class members for necessary business
expenses; (6) failing to timely pay Plaintiff and the putative class members wages

owed at separation; (7) failing to provide Plaintiff and the putative class members with accurate itemized wage statements; and (8) unfair business practices. (*Id.* ¶¶ 13-94.)

3.     In the Complaint, Plaintiff seeks to represent a putative class (the "Class") consisting of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years and before the filing of the initial complaint in this action and ending when notice to the Class is sent." (*Id.* ¶ 23.)  The class period, pursuant to Plaintiff's definition of the putative class, would extend from September 21, 2019, to present.

4.     On October 31, 2023, Defendant Kelly was served and received a copy of the service packet, including the Class Action Complaint, Summons, Alternative Dispute Resolution (ADR) Package, and other documents. (Ministrelli Decl. ¶ 5.)  A true and correct copy of the contents of this service package are attached as **Exhibit A** to the Declaration of Terri Ministrelli in Support of Kelly's Notice of Removal.

5.     On October 5, 2023, the Court posted a Notice of Hearing.  On October 5, 2023, Plaintiff filed the final Summons.  A true and correct copy of the aforementioned documents filed to the Superior Court docket, which were downloaded from https://cap.sb-court.org/search on November 29, 2023, are attached to Kelly's Request for Judicial Notice as **Exhibits B through C**.

6.     The San Bernardino County Superior Court's electronic docket indicates a Case Management Conference is set for April 5, 2024, at 8:30 a.m.

## II.     TIMELINESS OF REMOVAL

7.     Under 28 U.S.C. §§ 1446(b), a Defendant may remove a civil action:  (1) within 30 days after the receipt . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based"; or (2) "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446(b)(1), (b)(3); *see Thompson v. Target Corp.,*

1    No. EDCV-16-00839-JGB (MRWx), 2016 WL 4119937, at *3 (C.D. Cal. Aug. 2,
2    2016).

3          8.    This Notice of Removal is timely filed because it is filed within 30 days
4    of the service of the initial pleading.

5    **III.   CLASS ACTION FAIRNESS REMOVAL**

6          9.    This Court has original subject-matter jurisdiction over this action under
7    CAFA, codified in relevant part at 28 U.S.C. § 1332(d)(2), as: (1) the action involves
8    100 or more putative class members; (2) at least one class member is a citizen of a
9    state different from that of at least one defendant; and (3) the amount in controversy
10    exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), (d)(5),
11    & (d)(6).

12          10.    Under CAFA, a removing defendant need not submit any evidence of the
13    facts establishing jurisdiction in its notice of removal.  *Dart Cherokee Basin*
14    *Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) (holding a notice of removal
15    "need not contain evidentiary submissions").  Rather, "[a] defendant's notice of
16    removal need include only a plausible allegation that the jurisdictional facts exist."  *Id.*
17    at 89.  Evidence is required "only when plaintiff contests, or the court questions the
18    defendant's allegation."  *Id.*

19          11.    The United States Supreme Court in *Dart Cherokee* held that "no anti-
20    removal presumption attends cases invoking CAFA, which Congress enacted to
21    facilitate adjudication of certain class actions in federal court," adding that "CAFA
22    should be read with a strong preference that interstate class actions should be heard in
23    a federal court if properly removed by any defendant."  *Id.*  Following *Dart Cherokee*,
24    the Ninth Circuit has directed district courts to "interpret CAFA's provisions under
25    section 1332 broadly in favor of removal."  *Jordan v. Nationstar Mortg. LLC,* 781
26    F.3d 1178, 1184 (9th Cir. 2015); *see Arias v. Residence Inn by Marriott*, 936 F.3d 920
27    (9th Cir. 2019) (holding that courts may not remand where notice of removal plausibly
28    alleges the basis for removal).

3
NOTICE OF REMOVAL

1    **A.    The Putative Class Exceeds 100**

2         12.    The number of putative class members in this action is greater than 100.

3    28 U.S.C. § 1332(d)(5)(B).  Indeed, Plaintiff's alleged employer, Kelly, has employed

4    approximately 34,393 hourly non-exempt employees in the State of California during

5    the relevant time period.  (*See* Ministrelli Decl. ¶ 8.)  Plaintiff alleges that the class is

6    "estimated to be greater than 100 individuals."  (Ex. A., Compl. ¶ 26.)

7    **B.    Plaintiff And Kelly Are Minimally Diverse**

8         13.    CAFA requires only minimal diversity for purposes of establishing

9    federal jurisdiction.  That is, at least one putative class member must be a citizen of a

10   state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  In this

11   case, Plaintiff is a citizen of a state (California) that is different from the state of

12   citizenship of Kelly (Michigan).

13        **1.    Plaintiff Is A Citizen Of California**

14        14.    For diversity purposes, a person is a "citizen" of the state in which he or

15   she is domiciled.  *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th

16   Cir. 1983).  A person's domicile is the place where he or she resides with the intent to

17   remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.

18   2001) ("A person's domicile is her permanent home, where she resides with the

19   intention to remain or to which she intends to return.").  Citizenship is determined by

20   the individual's domicile at the time the lawsuit is filed.  *Armstrong v. Church of*

21   *Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d

22   747, 750 (9th Cir. 1986)); *see Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL

23   3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges

24   plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is

25   a California citizen for diversity purposes").

26        15.    Plaintiff alleges that she is a citizen of California.  (Ex. A., Compl. ¶ 7.)

27   In addition, based on Company records, Plaintiff was a resident of California

28   throughout the period of her employment with Kelly.  (Ministrelli Decl. ¶ 6.)  For

instance, when Plaintiff began her employment with Kelly, Plaintiff provided Kelly with a home address in Perris, California. (*Id*.) Additionally, the mailing address reflected on Plaintiff's paystubs throughout her employment with Kelly is in Perris, California. (*Id*.) Accordingly, on information and belief following a reasonable investigation, Plaintiff is a citizen of California.

### 2. Defendant Kelly Services Global, LLC Is Not A Citizen Of California

16.    Plaintiff names Kelly Services Global, LLC as a defendant. As a general rule, a limited liability company is a citizen of every state of which its members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction. . . . [A]n LLC is a citizen of every state of which its owners/members are citizens.").

17.    For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

18.    A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). In *Hertz*, the U.S. Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.* The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is

the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

19.    For removal purposes, citizenship is measured both when the action is filed and when it is removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

20.    At all times since Plaintiff commenced this lawsuit, Kelly Services Global, LLC has been a limited liability company formed under the laws of the State of Michigan with its principal place of business in the State of Michigan.  (Ministrelli Decl. ¶¶ 3-4.)  Kelly Services Global, LLC has maintained its corporate headquarters in Troy, Michigan.  (*Id.* ¶ 4.)  Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan.  (*Id.*)  Because Kelly Services Global, LLC was formed under the laws of the State of Michigan and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

21.    Accordingly, CAFA's diversity requirement is satisfied because at least one class member – here, Plaintiff – and Defendant Kelly Services Global, LLC are citizens of different states.

### 3.    Doe Defendants Have No Bearing On Diversity Jurisdiction

22.    Pursuant to 28 U.S.C. §§ 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *See, e.g.*, *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (holding that unnamed defendants are not required to

join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe Defendants 1 through 100 does not deprive this Court of jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### 4. Not All Defendants Need To Consent To Removal

23. Consent of Kelly's co-defendant, Steelcase, Inc., is not required under 28 U.S.C. § 1332(d). *See* 28 U.S.C. §1453(b).

### C. The Amount In Controversy Exceeds The Statutory Minimum

24. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case. . . . Overall, [the] new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

25. To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must make only a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v.*

7

*Owens*, 135 S. Ct. 547 (2014).  Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020).  A defendant can establish the amount in controversy by "providing only a short and plain statement of the grounds for removal." *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019).

26.    As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy the Court looks to what the plaintiff has alleged, not what the defendants will owe."), *aff'd,* 631 F.3d 1010 (9th Cir. 2011).

27.    While Kelly denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  Kelly bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without any admission, the truth of the allegations (which Kelly disputes).  Likewise, Kelly bases these calculations on the putative class alleged in the Complaint, and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiff has standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Kelly expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the

1  requirements of Rule 23, and the calculation of damages or any other monetary relief
2  in all respects.

3       28.    Because Plaintiff has not alleged a particular dollar figure regarding the
4  relief sought, reasonable estimates of the alleged amount in controversy are
5  appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).
6  Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage
7  abuse," without including "any modifying language to suggest less than uniform
8  violations," courts have found that the amount in controversy can be satisfied by
9  assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL
10 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels
11 & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants
12 will inevitably rely on some assumptions to support removal; a removing defendant is
13 not required to go so far as to prove Plaintiff's case for him by proving the actual rates
14 of violation.").

15      29.    As the U.S. Supreme Court has explained, a defendant's amount-in-
16 controversy allegations on removal are entitled to the same weight given those alleged
17 by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88.
18 As a result, the effect of any affirmative defenses potentially reducing the amount in
19 controversy cannot be considered when determining federal jurisdiction. *Geographic
20 Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir.
21 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003)
22 (holding that affirmative defenses may not be used to "whittle down the amount in
23 controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at
24 *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential
25 offsets may not be invoked to demonstrate the amount-in-controversy is actually less
26 than the jurisdictional minimum.").

27      30.    Plaintiff seeks the following monetary damages on behalf of the putative
28 class: (1) unpaid wages due to Kelly's alleged failure to pay for all hours worked (Ex.

A., Compl. ¶ 39); (2) overtime wages due to Kelly's alleged failure to pay overtime (*Id.* ¶ 47); (3) premiums as a result of Kelly's alleged failure to provide meal periods (*Id.* ¶ 52); (4) premiums as a result of Kelly's alleged failure to provide rest periods (*Id.* ¶ 56);  (5) expenses as a result of Kelly's alleged failure to provide reimbursement for necessary business (*Id.* ¶ 60); (6) expenses penalties as a result of Kelly's alleged failure to pay wages due at the time of separation (*Id.* ¶ 66); (7) penalties as a result of Kelly's alleged failure to provide accurate itemized wage statements (*Id.* ¶ 74); and (8) penalties as a result of Unfair Competition claims (*Id.* ¶ 94).

### 1.  Overtime Violations Claims

31.    Plaintiff seeks payment for alleged overtime violations as a result of Kelly's purported "systematic, company-wide policy and practice" of failing to pay all employees for all hours worked.  (*Id.* ¶ 4; *see id.* ¶ 44 (alleging that Plaintiff and other Class Members were *regularly* required to work overtime hours).)

32.    California Labor Code section 1194 permits "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Such amounts "are recoverable as restitution under the UCL," despite damages being unavailable under the statute.  *See, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014).

33.    While the statute of limitations for recovery for minimum wage and overtime violations under Labor Code section 1194 is three years, *Cal. Civ. Proc. Code* § 338, in this case Plaintiff alleges a claim for pay as part of her UCL claim. (*See* Compl. ¶ 82.)  According to the allegations of her Complaint, the four-year statute of limitations applies for purposes of removal.  *Cal. Bus. & Prof. Code* § 17208.  Accordingly, Plaintiff's proposed class period for the overtime claims is from **September 21, 2019, to present**.

34.     The Complaint is silent as to the amount of allegedly unpaid overtime hours worked or unpaid wages attributable to overtime, thereby precluding precise estimates of the amount in controversy.  *See generally* Compl.; *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (holding that, because plaintiff included no fact-specific allegations regarding overtime, a 100% estimation for labor code violations for the putative class is proper).  Plaintiff, however, does allege that Kelly maintained a "systemic, company-wide policy and practice" of not paying employees for all hours worked.  (*See* Compl. ¶ 4.)

35.     From October 10, 2019, to October 29, 2023,[1] there were approximately 34,393 current and former non-exempt hourly employees who are or were employed by Kelly in California.  (Ministrelli Decl. ¶ 8.)  These 34,393 current and former employees worked a total of approximately 775,273 workweeks.  (*Id*.)  Plaintiff, who alleges that she is typical of the class, had an hourly rate of pay of $20.50 during the relevant time period and an average overtime rate of pay of $30.75.  (*Id*. ¶ 10.)

36.     Although Kelly denies that Plaintiff (or any putative class member) is entitled to any unpaid overtime wages, assuming each class member worked just ten minutes of unpaid overtime per week, calculated at Plaintiff's typical average overtime rate of pay, the amount in controversy would be approximately **$4,052,739.61** [775,273 Total Work Weeks * 0.17 hours * $30.75 Average Hourly Overtime Rate) = $**4,052,739.61**].

37.     For purposes of calculating the amount in controversy under CAFA removal, an estimate of just ten minutes a week – or approximately 2 minutes per day – of unpaid overtime is a very conservative estimate in light of the broad allegations of systematic underpayment of overtime – let alone claims that overtime that was paid was purportedly not paid at the proper rate.  Indeed, the Ninth Circuit and numerous district courts have held that an estimate of at least 30 minutes per class member per

---

[1] Kelly reviewed data for a slightly shorter time period than the full time period alleged in Plaintiff's Complaint.

11

week is appropriate in light of Plaintiff's allegations.  *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week.  This assumption is reasonable in light of the Complaint, whose allegations lack specificity."); *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding estimate of one hour per class member per week appropriate where plaintiff alleged "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assume[d] that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate assumption that each class member is owed one hour of overtime compensation per week where complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where plaintiffs asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work); *Hender v. Am. Directions Workforce, LLC,* 2020 WL 5959908 at *2 (E.D. Cal. Oct. 7, 2020) (holding that an assumption of one unpaid overtime hour per week was reasonable and conservative when plaintiff alleges a "policy and practice" of failing to pay overtime wages).  At 30 minutes per workweek, the amount in controversy balloons to over **$11,000,000** [775,273 Total Work Weeks * 0.5 hours * $30.75 Average Hourly Overtime Rate) = **$11,919,822.40**].  In other words, based on

Plaintiff's allegations (which Kelly expressly denies), this aspect of the allegations alone far exceeds the minimum amount in controversy to support removal.

## 2. Unpaid Meal Premiums Claim

38.     Plaintiff alleges that Kelly had a purported "systematic, company-wide policy and practice" of failing to provide employees with meal periods and that Kelly's "policy and practice was not to provide meal periods to Plaintiff and the Class in compliance with the law." (*Id.* ¶¶ 4, 16; *see id.* ¶ 51 (alleging that Kelly *regularly* failed to provide Plaintiff and the Class with both meal periods as required by California law).)

39.     Based on these alleged violations of the Labor Code, Plaintiff seeks premium wages for the allegedly missed meal breaks.  *Id.*, Prayer for Relief.

40.     California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  *Cal. Lab. Code* § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

41.     While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff

pursues an action for restitution under the UCL.  *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation.").  Accordingly, the proposed class period for the unpaid meal period premium claim is from **September 21, 2019, to present**.

42.    As noted above, from October 10, 2019, to October 29, 2023, the putative class members worked a total of approximately 775,273 workweeks – *i.e.*, approximately 775,273 pay periods.  (Ministrelli Decl. ¶ 8.)

43.    Assuming a violation rate of one uncompensated, non-complaint meal period every three workweeks, the amount in controversy on this claim would equal at least **$5,297,698.76** [$20.50/hour (one hour of premium pay at Plaintiff's typical average rate of pay) x 258,424.33 weeks (one third of the total workweeks) = **$5,297,698,76**].  If, as supported by the language in the Complaint, Plaintiff asserts one non-complaint meal period a *week*, the amount in controversy for this claim is over **$15,000,000** [$20.50/hour (one hour of premium pay at Plaintiff's typical average rate of pay) x 775,273 weeks = **$15,893,096.50**].

44.    Kelly's estimate is conservative.  Kelly assumes only one meal period violation over a three-week period, which is arguably less frequent than Plaintiff suggests with her allegations that Kelly had a "systematic, company-wide policy and practice" of failing authorize and permit meal breaks or to pay the requisite premiums in lieu of providing said breaks.  (*See* Ex. A., Compl. ¶ 4.)

45.    Based on Plaintiff's allegations of "systemic" meal period issues, an estimated violation rate of one unpaid meal period premium every three weeks per class member is reasonable.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147. 1151 (S.D. Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate for rest periods is reasonable); *Ramirez v. HV Global Mgmt. Corp.*, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (concluding a 25% violation rate in a meal period violation claim reasonable and observing that courts in the Northern District

have found violation rates of 25% to 60% reasonable); *Sanchez v. Abbott Labs.*, 2021 WL 2676057, at 4-5 (E.D. Cal. June 30, 2021) (holding that a 60 percent violation rate for meal period violations is reasonable when plaintiff alleged a "pattern and practice" of meal period violations). Kelly's assumption of one violation in every three workweeks – or one in fifteen workdays (assuming a 5 day-a-week workweek) – represents an assumed violation rate of less than 7% on a claim of "systemic" violations by the employer. At just one unpaid meal premium every week, this claim alone supports removal under CAFA [$20.50/hour (one hour of premium pay at Plaintiff's typical average rate of pay) x 775,273 weeks = **$15,893,096.50**].

### 3. Unpaid Rest Premiums Claim

46.   Plaintiff alleges that Kelly had a purported "systematic, company-wide policy and practice" of failing to provide employees with rest periods and that Kelly's "failed to authorize Plaintiff and the Class to take rest breaks." (*See* Compl. ¶¶ 4, 17; *see also id.* ¶ 55.)

47.   Based on these alleged violations of the Labor Code, Plaintiff seeks premium wages for the allegedly missed rest breaks. *Id.*, Prayer for Relief.

48.   California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." *Cal. Lab. Code* § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, at *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

49.    While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL.  *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation.").  Accordingly, the proposed class period for the unpaid meal period premium claim is from **September 21, 2019, to present**.

50.    As noted above, from October 10, 2019, to October 29, 2023, the putative class members worked a total of approximately 775,273 workweeks – *i.e.*, approximately 775,273 pay periods.  (Ministrelli Decl. ¶ 8.)

51.    Assuming a violation rate of one uncompensated, non-complaint meal period every three workweeks, the amount in controversy on this claim would equal at least **$5,297,698.76** [$20.50/hour (one hour of premium pay at Plaintiff's typical average rate of pay) x 258,424.33 weeks (one third of the total workweeks) = **$5,297,698,76**].  If, as supported by the language in the Complaint, Plaintiff asserts one non-complaint meal period a *week*, the amount in controversy for this claim is over **$15,000,000** [$20.50/hour (one hour of premium pay at Plaintiff's typical average rate of pay) x 775,273 weeks = **$15,893,096.50**].

52.    Kelly's estimate is conservative.  Kelly assumes only one rest period violation over a three-week period, which is arguably less frequent than Plaintiff suggests with her allegations that Kelly had a "systematic, company-wide policy and practice" of failing authorize and permit rest breaks or to pay the requisite premiums in lieu of providing said breaks.  (*See* Compl. ¶ 4.)

53.    Based on Plaintiff's allegations of "systemic" rest period issues, an estimated violation rate of one unpaid rest period premium every three weeks per class

1  member is reasonable.  *See Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147. 1151 (S.D.

2  Cal. 2018 (concluding a 60% violation rate for meal periods and a 30% violation rate

3  for rest periods is reasonable). Kelly's assumption of one violation in every three

4  workweeks—or one in fifteen workdays (assuming a 5 day-a-week workweek)

5  represents an assumed violation rate of less than 7% on a claim of "systemic"

6  violations by the employer.  At just one unpaid rest premium every other week, this

7  claim alone supports removal under CAFA [$20.50/hour (one hour of premium pay at

8  Plaintiff's typical average rate of pay) x 775,273 weeks = **$15,893,096.50**].

### 4.   Waiting Time Penalties

9

10  54.   Plaintiff alleges that Kelly "willfully failed and refused to timely pay

11  Plaintiff and the Class at the conclusion of their employment all wages." (*See* Ex. A.,

12  Compl. ¶ 18.)  Plaintiff further alleges that Kelly "did not pay Plaintiff and the Class

13  their final paychecks immediately upon termination."  (*Id.*)

14  55.   Under California Labor Code § 203, a discharged employee is entitled to

15  penalties of up to 30 days of pay at the regular pay.  Cal. Lab. Code § 203(a) ("If an

16  employer willfully fails to pay … any wages of an employee who is discharged or

17  who quits, the wages of the employee shall continue as a penalty from the due date

18  thereof at the same rate until paid or until an action therefor is commenced; but the

19  wages shall not continue for more than 30 days.").

20  It is reasonable to assume that each employee in the subclass waited over 30 days for

21  payment of any allegedly unpaid wages.  *McCollum v. TGI Friday's*, Inc., 2022 WL

22  2663870, at *7 (C.D. Cal. June 22, 2022) (concluding defendant's assumptions that

23  each employee waited at least 30 days to receive their wages owed after termination

24  (*i.e.*, the maximum penalty) was reasonable given that "plaintiff's allegations under

25  this claim are based on the 'systematic pattern' of violations by Defendant and

26  concern Defendant's "fail[ure] to pay the Waiting Time Subclass all their earned

27  wages upon termination, including, but not limited to, meal period premiums, and rest

28  period premiums.'"); *Tajonar v. Echosphere, LLC*,), 2015 WL 4064642, at *4-5 (S.D.

Cal. July 2, 2015) (finding reasonable the defendant employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Ramirez*, 2022 WL 1210402 at *6 (concluding a 100% violation rate is reasonable for waiting time penalties where the complaint at issue contained no guidance on the extent of the violations the plaintiff was alleging).

56.    From October 10, 2020, to October 29, 2023, there were approximately 1094 former non-exempt hourly employees who separated.  (Ministrelli Decl. ¶ 9.) Assuming that these non-exempt, hourly employees are entitled to eight hours of pay for 30 days in penalties, as would be typical of Plaintiff, then the potential waiting time penalties amount to **$5,382,480.00** [$20.50 average hourly rate x 8 hours per day x 30 days x 1094 employees = **$5,382,480.00**].

### 5.    Approximate Aggregate Amount In Controversy

57.    Although Kelly denies Plaintiff's allegations that she or any non-exempt California employee or member of the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for the asserted claims, exclusive of attorneys' fees, interest, or costs, is between approximately **$20,030,671.10** to **$49,088,495.40** calculated as follows:

| | |
|---|---|
| Overtime Claims | **$4,052,739.61 -- $11,919,822.40** |
| Unpaid Meal Period Premiums Claim | **$5,297,698.76 -- $15,893,096.50** |
| Unpaid Rest Period Premium Claims | **$5,297,698.76 -- $15,893,096.50** |
| Waiting Time Penalties | **$5,382,480.00** |
| **Total** | **$20,030,671.10 – $49,088,495.40** |

58.    The figures above do not take into account damages or penalties associated with claims for wage statement violations, failure to reimburse business

18

expenses, attorneys' fees, or the monetary cost associated with Plaintiff's requested injunctive relief. Taking into account a *reasonable* assumption for any of these claims would contribute to the minimum amount in controversy. *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022) (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).

59.    As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement. Indeed, using a conservative estimate, the total amount in controversy is at least between **$20,030,671.10** to **$49,088,495.40**

## IV.    <u>VENUE</u>

60.    Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(d). This action originally was brought in the San Bernardino County Superior Court of the State of California, which is located within the Central District of California. 28 U.S.C. § 84(d). Therefore, it is properly removed to this District.

## V.    <u>NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF</u>

61.    This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Bernardino County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VI.    <u>PRAYER FOR REMOVAL</u>

62.    **WHEREFORE,** Defendant Kelly Services Global, LLC prays that this civil action be removed from the San Bernardino County Superior Court of the State of California to the United States District Court for the Central District of California.

Dated: November 29, 2023          **DUANE MORRIS LLP**

By */s/ Nick Baltaxe*
Gerald L. Maatman
Jennifer A. Riley
Shireen Y. Wetmore
Nick Baltaxe

Attorneys for Defendant,
KELLY SERVICES GLOBAL, LLC